Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
Jared Lucky (SBN 354413)
jlucky@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

*Counsel for Plaintiff Jenna Rodarte*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| **JENNA RODARTE**, individually and on behalf of all others similarly situated, *Plaintiff,* v. **BETTERHELP, INC.**, a Delaware corporation, *Defendant.* | Case No. _____ **CLASS ACTION COMPLAINT FOR:** (1) **VIOLATION OF CAL. BUS & PROF. CODE § 17200** **DEMAND FOR JURY TRIAL** |

Plaintiff Jenna Rodarte, on behalf of herself and other similarly situated individuals, brings this Class Action Complaint and Demand for Jury Trial against Defendant BetterHelp, Inc. ("BetterHelp" or "Defendant") to stop it from misleading patients about its mental health therapy services. Plaintiff alleges as follows upon personal knowledge as to herself and her acts and experiences, and, as to all other matters, upon information and belief.

**INTRODUCTION**

1. BetterHelp presents itself as an online platform that provides accessible and high-quality mental health services through one-on-one virtual therapy sessions. But in reality, BetterHelp functions more like a tech startup than a legitimate network of licensed therapists. When the company was acquired in 2015 by Teladoc Health, Inc.—a multinational, publicly traded company—it began pouring resources into marketing and advertising to rapidly grow its

1  user base as quickly as possible. Unfortunately for its patients, BetterHelp failed to invest in building a network of qualified therapists large enough to meet demand. By 2020, BetterHelp had hundreds of thousands of paying patients, but not nearly enough therapists to treat them.

2. When therapists in a traditional psychology or psychiatry practice are too busy to accept new patients, they turn them away or put them on a waitlist. But BetterHelp—which was founded by two individuals that held no medical licenses and had no experience working in the healthcare sector—bears no resemblance to a traditional therapy practice. BetterHelp is a for-profit corporation engaged in the practice of healthcare. Instead of sacrificing growth and profit by turning away new patients, BetterHelp continues to accept new patients even when there are no therapists available to treat them, let alone therapists that are appropriately licensed and suitable to treat their therapeutic needs (*i.e.*, substance abuse, depression, anxiety, etc.).

3. Rather than disclose this overcapacity issue to new patients, BetterHelp creates the false impression that it has a large enough network of therapists to meet demand and that new patients will be appropriately matched with a therapist suitable to treat their specific therapeutic needs. In reality, BetterHelp often ignores the patient's stated therapeutic needs and simply assigns a therapist based on availability. In fact, many new patients are forced to wait several weeks or even longer only to eventually be matched with an unsuitable, unlicensed, or incompatible therapist. While this "matching" policy might help BetterHelp achieve its short-term growth and revenue targets, it endangers the patients that put their trust in BetterHelp to treat their mental health.

4. By prioritizing its corporate profits over the mental health and well-being of its patients, BetterHelp has betrayed the very mission that it claims to uphold. BetterHelp's unethical and fraudulent business practices are putting vulnerable patients at risk, depriving them of the care they deserve, and damaging their trust in the mental health industry.

5. Plaintiff brings this lawsuit on behalf of herself and all others similarly situated patients to hold BetterHelp accountable for its deceptive practices and to send a clear message that mental health services must prioritize patient well-being and adhere to ethical standards.

## PARTIES

6. Plaintiff Jenna Rodarte is a natural person and citizen of the State of California.

7. Defendant BetterHelp, Inc., is a Delaware corporation with a principal place of business at 990 Villa Street, Mountain View, California 94041.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because (i) at least one member of the Class is a citizen of a different state than any Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (iii) none of the exceptions under that subsection apply to this action.

9. This Court has personal jurisdiction over Defendant because Defendant conducts business in the State of California and maintains its headquarters in the State of California, and the events giving rise to the claims alleged herein occurred in the State of California.

10. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant and/or its parents or affiliates are headquartered in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## DIVISIONAL ASSIGNMENT

11. Pursuant to Northern District of California Civil Local Rules 3-2(c), 3-2(e), and 3-5(b), assignment to the San Jose Division is proper because a substantial part of the events giving rise to the Plaintiff's claims occurred, in substantial part, in Santa Clara County.

## STATEMENT OF FACTS

**I.** *BetterHelp prioritizes profits over the delivery of legitimate therapy services.*

12. BetterHelp was founded in 2013 by Alon Matas and Danny Bragonier—serial entrepreneurs with no healthcare experience—as a direct-to-consumer online therapy service that offers subscription-based packages that include text-based therapy as well as video conferencing, live chat, and audio calls.

13. Two years later, in 2015, BetterHelp was acquired by Teladoc, a multinational public company. BetterHelp grew rapidly over the next 5 years, becoming a major player in the

CLASS ACTION COMPLAINT

emerging field of virtual mental health services. The company offered rapid growth to investors based on a combination of widespread need and barriers to access.

14. When the COVID-19 pandemic began in early 2020, BetterHelp's growth accelerated further as people turned to telehealth amid lockdowns and social isolation. The company grew from 118,000 patients in 2018 to more than 641,000 patients in 2020. To date, BetterHelp has acquired more than 2 million users and generated revenues in excess of $1 billion.

15. BetterHelp's relentless quest for growth and profit created a fundamental tension within the company. The delivery of health care took a backseat to its profit-centric business function. This tension manifested in shocking ways, including, but not limited to, major breaches of patient confidentiality and false advertising.

16. Since it was acquired by Teladoc, BetterHelp has acted more like a Silicon Valley tech company than a healthcare provider. For example, in 2020, BetterHelp was caught sharing its patients' personal data with Facebook, including how many times they opened the BetterHelp app, along with metadata from each message they sent to their therapists on the platform. The data enabled Facebook to mine critical information about each patient, including who they were, where they lived, and how often they received mental health treatment.

17. In July 2023, the Federal Trade Commission ("FTC") ordered BetterHelp to pay $7.8 million to resolve claims that it disclosed its patients' sensitive health data—including email addresses, IP addresses, and health questionnaire information—with third parties such as Facebook and Snapchat for advertising despite its representations that it would keep such sensitive data strictly private. The Director of the FTC's Bureau of Consumer Protection explained that "When a person struggling with mental health issues reaches out for help, they do so in a moment of vulnerability," accused BetterHelp of "illegal exploitation," and lamented that BetterHelp "betrayed" its customers for the sake of profit.

**II.     *BetterHelp Lures New Patients By Making Materially False Promises About The Capacity of Its Provider Network.***

18. BetterHelp tells users it has "the world's largest network of licensed, accredited, and experienced therapists" to give them the false impression that it has a therapist network sufficient to rapidly "match" patients with a provider suitable to meet their needs. In reality, however, BetterHelp accepts more patients than it has capacity to adequately treat.

19. After navigating to BetterHelp's website, users click a button to "Get Started." At that point, they are directed through an intake questionnaire which asks several questions to help "match" them to a therapist who they "can establish a personal connection with." Answers are fed into BetterHelp's algorithmic system which it touts as a key to the success of its matching process and credits it with achieving preferred user outcomes. BetterHelp writes, "[t]he scale of our data and provider network, powered by our data science capabilities, creates a competitive advantage for us in providing an optimal match for an individual with a provider, increasing the rate of success in therapy."

20. Despite these promises, BetterHelp's intake process consistently fails to offer patients useful matches. There have been widespread instances of users getting matched with providers who are not adequately trained to provide the mental health care requested.[1] Even providers on the platform have reported that clients have been matched to them despite explicitly requesting a different type of therapist (e.g., a white male therapist assigned to a woman patient seeking a female African American therapist). In many instances, BetterHelp

---

[1] By assigning therapists that lack the training and experience necessary to treat patients' stated therapeutic needs, BetterHelp's matching policy violates the American Counseling Association's ("ACA") Code of Ethics. *See e.g.*, ACA Code of Ethics Section C.2.a (Boundaries of Competence) ("Counselors practice only within the boundaries of their competence, based on their education, training, supervised experience, state and national professional credentials, and appropriate professional experience"); *id.* C.2.b (New Specialty Areas of Practice) ("Counselors practice in specialty areas new to them only after appropriate education, training, and supervised experience. While developing skills in new specialty areas, counselors take steps to ensure the competence of their work and protect others from possible harm."). Similarly, it violates the American Psychological Association's Code of Ethics which require that "psychologists have a primary ethical obligation to provide professional services only within the boundaries of their competence based on their education, training, supervised experience, consultation, study or professional experience." APA Code of Ethics Rule 2.01.

pairs patients with providers who have expressly told BetterHelp that they are at capacity and not accepting new patients, which results in provider no-shows.

21. In many instances, BetterHelp matches its California patients, including Plaintiff Rodarte, with therapists that are not even licensed to provide therapy in California.

22. BetterHelp can't even keep its story straight about how long it takes to get matched with a therapist. In one section on its website, BetterHelp assures users that "[a]fter taking our short questionnaire, you can *instantly* message the therapist that you've been matched to." On another page, BetterHelp says that new users won't be matched instantly, but rather "in most cases," they will be matched "within 24 hours" In reality, BetterHelp's matching process take several days—or in some cases, weeks—given its overcapacity problems.

23. To make matters worse, BetterHelp assures its patients that they can change providers at any time—a fact that is particularly meaningful because BetterHelp does not provide new patients with the opportunity to meet or interview the therapists that they are "matched" with before signing up and providing their payment information.

24. BetterHelp frames this as a simple and fast process, describing it as easy as a "click of a button" to get matched with another therapist. BetterHelp even touts this as a unique benefit of online counseling.

25. But the process of switching providers suffers from the same problems and delays as the initial assignment. In practice, this has meant that BetterHelp continues to bill patients for extended periods of time, even when they don't receive any care. If patients were aware that BetterHelp did not have the capacity to address their needs, and that they would be caught in a cycle of charges for inadequate or nonexistent services, they would choose not to pay BetterHelp for therapy. This is particularly true for at-risk populations that BetterHelp targets including those, "who can't commute to an appointment . . . due to remote location, income insecurity, or a disability."

### III. *Plaintiff Jenna Rodarte's Experience with BetterHelp.*

26. Plaintiff Rodarte is a California resident that turned to BetterHelp for therapy in June 2020.

27. During the new patient intake process, BetterHelp presented Plaintiff Rodarte with a series of questions designed to obtain information necessary to pair her with a suitable and compatible therapist. In response to the question "Would you like to be matched with a therapist who specializes in LGBT issues," Plaintiff Rodarte answered "Yes." As a member of the LGBT community, it was critical to Plaintiff Rodarte that she was paired with a therapist that had experience working with LGBT patients.

28. However, instead of pairing Plaintiff Rodarte with a therapist that specialized in LGBT issues, BetterHelp paired her with a therapist that was not accepting of, and highly antagonistic toward, members of the LGBT community.

29. After a few therapy sessions, Plaintiff Rodarte finally felt comfortable enough to disclose her sexuality identity to her therapist. Unfortunately, her therapist became visibly shocked and stated, "I didn't know this" and "Did you say this in your questionnaire?" Clearly having no experience with LGBT issues, Plaintiff Rodarte's therapist then told her not to read any books with "female friendships" because they could be "pushing an agenda" and to avoid walking through parks because she could be assaulted. Plaintiff Rodarte's therapist also told her that spending time with family and attending church would improve her mental health, even though she knew that Plaintiff Rodarte's family made her anxious and that she was not religious. Plaintiff Rodarte's therapist made her feel guilt and shame, and the therapy sessions had a devastating impact on her mental health.

30. Plaintiff Rodarte thereafter cancelled her BetterHelp membership in August 2020, but due to her debilitating mental health issues, turned back to BetterHelp a month later in the hopes of being matched with a suitable therapist. This time, BetterHelp matched Plaintiff Rodarte with a therapist located in Charlotte, North Carolina who specialized in LGBT issues, but failed to tell Plaintiff Rodarte that her new therapist was did not possess the requisite

professional license to treat patients in the State of California. Moreover, Plaintiff Rodarte was nonetheless prevented from utilizing the therapy sessions she paid for up front on October 14, 2020, as her sessions with her new out-of-state, unlicensed therapist suffered from significant technical issues that led to most being significantly interrupted or cut short.

31.   Plaintiff Rodarte would not have purchased therapy services from BetterHelp if she had known that it lacked a large enough network of suitable therapists on hand to provide services.

32.   Plaintiff Rodarte would not have purchased therapy services from BetterHelp if she would have known that it would assign her to a therapist that lacked the proper licensing to treat patients residing in California.

## CLASS ACTION ALLEGATIONS

33.   **Class Definition:** Plaintiff brings this proposed class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of herself and the following class:
> All individuals who reside in California that were matched with a provider that did not hold a valid and current license to engage with patients located in California.

34.   **Numerosity:** The exact number of Class members is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. It is believed that tens of thousands of consumers have purchased BetterHelp plans and fall into the class definition, having been harmed by BetterHelp's misrepresentations and practices. The number and identity of class members can be ascertained from BetterHelp's records.

35.   **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members. Common questions for the Class include, but are not necessarily limited to the following:

(a)   Whether BetterHelp matched its California patients with out-of-state therapists that did not hold a valid and current license to treat patients located

                in California;

    (b)    Whether BetterHelp's out-of-state matching policy described above is unfair and/or fraudulent under the Cal. Bus. & Prof. Code § 17200, California's Unfair Competition Law ("UCL"); and

    (c)    Whether Plaintiff and the Class are entitled to disgorgement and/or restitution.

36. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff's claims are representative of the claims of the other members of the Class. That is, Plaintiff and the members of the Class sustained harm as a result of Defendant's conduct. Plaintiff also has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor her counsel have any interests adverse to the Class.

37. **Predominance and Superiority:** Class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, as joinder of all members of the Class is impracticable. Individual litigation would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

**FIRST CAUSE OF ACTION**
**Violations of Cal. Bus. & Prof. Code § 17200, *et seq.***
**On Behalf Plaintiff Rodarte and the Class**

38. Plaintiff Rodarte incorporates the above allegations as if fully set forth herein.

39. BetterHelp and Plaintiff Rodarte are "persons" as defined by Cal. Bus. & Prof. Code § 17201.

40. By engaging in the above-described deceptive and unfair business acts and practices, BetterHelp has committed and continues to commit one or more acts of unfair and fraudulent conduct within the meaning of Cal. Bus. & Prof. Code § 17200, *et seq.* These acts and practices constitute a continuing and ongoing unlawful business activity defined by the UCL, and justify the issuance of an injunction, restitution, and other equitable relief pursuant to the UCL.

41. The California Board of Behavioral Sciences requires that "all persons engaging in the practice of marriage and family therapy, educational psychology, clinical social work, or professional clinical counseling via telehealth . . . with a client who is physically located in [the State of California] must have a valid and current license or registration issued by the Board." 16 Cal. Code of Regs. § 1815.5(a). In other words, only therapists that are licensed by the State of California may treat patients located in the State of California.

42. When therapists provide therapy to patients located in California without a valid and current license to do so, they are engaged in "unprofessional conduct." 16 Cal. Code of Regs. § 1815.5(f).

43. Despite this licensing restriction, BetterHelp knowingly matched Plaintiff Rodarte and the Class members with therapists that were not licensed by the State of California.

44. At no time did BetterHelp disclose to Plaintiff Rodarte or the members of the Class that they would matched—or could be matched—with therapists that were not licensed by the State of California.

45. BetterHelp concealed this practice because it knew that if Plaintiff Rodarte and the Class members had knowledge that they were matched with therapists that were not licensed to treat patients in California—and that their therapists were engaging in "unprofessional conduct" by treating patients in California—they would not have agreed to pay any money to BetterHelp for therapy sessions.

CLASS ACTION COMPLAINT

46. As such. BetterHelp engaged in acts and practices that violate the "unfair" prong of the UCL.

47. BetterHelp also violated the "fraudulent" prong of the UCL by concealing its true matching practices from its patients. BetterHelp knew that patients would not pay money for therapy if they knew there was a possibility that they would be matched with an unlicensed therapist, or at the very least would have paid substantially less.

48. BetterHelp knew that patients would not pay money for therapy if they knew that their therapist was engaging in "unprofessional conduct" by treating them. This omission is therefore highly material and likely to deceive reasonable consumers, especially given that BetterHelp tells patients that they will be matched with a "Professional, licensed, and vetted therapists who you can trust." In fact, the new patient intake questionnaire that every patient—including Plaintiff Rodarte and the Class—must complete states that "The following questions are designed to help match you to a *licensed therapist* based on your needs and personal preferences." (emphasis added.)

49. Plaintiff Rodarte and the Class suffered harms and losses in the form of all monies paid to BetterHelp in connection with the mental health services that were rendered by unlicensed providers. But for BetterHelp's misrepresentations and omissions, Plaintiff Rodarte and the Class would not have utilized or paid for BetterHelp's services.

50. The foregoing acts and practices by BetterHelp constitute an ongoing unfair and fraudulent business activity defined by the UCL. BetterHelp's conduct is contrary to the public welfare as it contravenes California law designed to protect patients' best interests and violated established public policy. The business practices described above are likely to deceive members of the public, are immoral, unethical, oppressive, and unscrupulous, and have caused injury to customers far greater than any alleged countervailing benefit.

51. Plaintiff Rodarte and the Class lack an adequate remedy at law because (1) the UCL does not provide for monetary damages or any other legal remedy, and (2) legal remedies are less certain.

52. Plaintiff Rodarte, individually and on behalf of the Class, brings this action to enforce an important right affecting the public interest, and therefore also seek an award of attorneys' fees under Cal. Code of Civ. Proc. § 1021.5.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Jenna Rodarte, individually and on behalf of the Class defined herein, respectfully requests that the Court enter an Order:

A. Certifying the Class as defined above, naming Plaintiff as a representative of the Class, and naming Plaintiff's attorneys as Class Counsel;

B. Declaring that BetterHelp's conduct violates the statutes referenced herein;

C. Declaring that BetterHelp's conduct described herein is unfair and fraudulent under the UCL;

D. Awarding injunctive relief and other equitable relief necessary to protect the interests of Plaintiff and the Class, including by enjoining Defendant from continuing to engage in the unfair, unlawful, and/or fraudulent business practices alleged herein;

E. Awarding restitution and disgorgement of profits in an amount to be determined at trial;

F. Awarding reasonable attorneys' fees and costs; and

G. Awarding any other relief this Court deems just, proper, and equitable.

## **JURY DEMAND**

Plaintiff hereby requests a trial by jury of all issues so triable.

Dated: October 14, 2024

By: /s/ Rafey S. Balabanian
One of Plaintiff's Attorneys

Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
Jared Lucky (SBN 354413)
jlucky@edelson.com
EDELSON PC
150 California Street, 18th Floor

CLASS ACTION COMPLAINT

San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

*Counsel for Plaintiff and the Putative Class*

CLASS ACTION COMPLAINT