1  Rafey S. Balabanian (SBN 315962)
   rbalabanian@edelson.com
2  Jared Lucky (SBN 354413)
   jlucky@edelson.com
3  EDELSON PC
   150 California Street, 18th Floor
4  San Francisco, California 94111
   Tel: 415.212.9300
5  Fax: 415.373.9435

6  *Counsel for Plaintiffs Jenna Rodarte and K.T.*

7

8                    UNITED STATES DISTRICT COURT
9                   NORTHERN DISTRICT OF CALIFORNIA
                         SAN JOSE DIVISION
10

11 **JENNA RODARTE and K.T.**, individually    Case No. 5:24-cv-07154-BLF
   and on behalf of all others similarly situated,
12                                              **SECOND AMENDED CLASS ACTION
                    *Plaintiffs,*                  COMPLAINT FOR:**
13
          *v.*                                  **(1) VIOLATION OF CAL. BUS & PROF.
14                                                  CODE § 17200** *(automatic renewal
   **BETTERHELP, INC.**, a Delaware                 violations)*
15 corporation,
                                                **(2) VIOLATION OF CAL. BUS & PROF.
16                  *Defendant.*                    CODE § 17200** *(misrepresentations)*
17
                                                 **DEMAND FOR JURY TRIAL**
18

19         Plaintiffs Jenna Rodarte and K.T., on behalf of themselves and other similarly situated

20 individuals, bring this Second Amended Class Action Complaint and Demand for Jury Trial

21 against Defendant BetterHelp, Inc. ("BetterHelp" or "Defendant") to stop it from misleading

22 patients and unlawfully enrolling them in its automatically renewing subscription program.

23 Plaintiffs allege as follows upon personal knowledge as to themselves and their acts and

24 experiences, and, as to all other matters, upon information and belief.

25                              **<u>INTRODUCTION</u>**

26         1.      BetterHelp presents itself as an online platform that provides accessible and

27 high-quality mental health services through one-on-one virtual therapy sessions. But in reality,

28 BetterHelp functions more like a tech startup than a legitimate network of licensed therapists.

---

-1-

SECOND AMENDED CLASS ACTION COMPLAINT

When the company was acquired in 2015 by Teladoc Health, Inc.—a multinational, publicly traded company—it began pouring resources into marketing and advertising to rapidly grow its user base as quickly as possible. Unfortunately for its patients, BetterHelp failed to invest in building a network of qualified therapists large enough to meet demand. By 2020, BetterHelp had hundreds of thousands of paying patients, but not nearly enough therapists to treat them.

2.    When therapists in a traditional psychology or psychiatry practice are too busy to accept new patients, they turn them away or put them on a waitlist. But BetterHelp—which was founded by two individuals that held no medical licenses and had no experience working in the healthcare sector—bears no resemblance to a traditional therapy practice. BetterHelp is a for-profit corporation engaged in the practice of healthcare. Instead of sacrificing growth and profit by turning away new patients, BetterHelp continues to accept new patients even when there are no therapists available to treat them, let alone therapists that are appropriately licensed and suitable to treat their therapeutic needs (*i.e.*, substance abuse, depression, anxiety, etc.).

3.    Rather than disclose this overcapacity issue to new patients, BetterHelp deceives them in two distinct ways. First, BetterHelp creates the false impression that it has a large enough network of therapists to meet demand and that new patients will be appropriately matched with a therapist suitable to treat their specific therapeutic needs. In reality, BetterHelp often ignores the patient's stated therapeutic needs and simply assigns a therapist based on availability. In fact, many new patients are forced to wait several weeks or even longer only to eventually be matched with an unsuitable, unlicensed, or incompatible therapist. While this "matching" policy might help BetterHelp achieve its short-term growth and revenue targets, it endangers the patients that put their trust in BetterHelp to treat their mental health.

4.    Second, BetterHelp unilaterally enrolls them in an automatically recurring subscription plan without their permission. BetterHelp enrolls new patients into its recurring plans even when their assigned therapists are unsuitable for their therapeutic needs or have no availability to schedule therapy sessions that have already been paid for.

5.    By prioritizing its corporate profits over the mental health and well-being of its

1    patients, BetterHelp has betrayed the very mission that it claims to uphold. BetterHelp's

2    unethical and fraudulent business practices are putting vulnerable patients at risk, depriving

3    them of the care they deserve, and damaging their trust in the mental health industry.

4         6.      Plaintiffs bring this lawsuit on behalf of themselves and all other similarly

5    situated individuals to hold BetterHelp accountable for its deceptive and unfair business

6    practices and to send a clear message that mental health services must prioritize patient well-

7    being and adhere to ethical standards.

8                                         **PARTIES**

9         7.      Plaintiff Jenna Rodarte is a natural person and citizen of the State of Arizona.

10   Plaintiff Rodarte was a citizen of California at all relevant times in this complaint, including

11   when she signed up for and used BetterHelp, but she is currently a citizen of Arizona.

12        8.      Plaintiff K.T. is a natural person and citizen of the State of California.

13        9.      Defendant BetterHelp, Inc., is a Delaware corporation with a principal place of

14   business at 990 Villa Street, Mountain View, California 94041.

15                              **JURISDICTION AND VENUE**

16        10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)

17   because (i) at least one member of the Class is a citizen of a different state than any Defendant,

18   (ii) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (iii)

19   none of the exceptions under that subsection apply to this action.

20        11.     This Court has personal jurisdiction over Defendant because Defendant conducts

21   business in the State of California and maintains its headquarters in the State of California, and

22   the events giving rise to the claims alleged herein occurred in the State of California.

23        12.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant

24   and/or its parents or affiliates are headquartered in this District and a substantial part of the

25   events or omissions giving rise to Plaintiff's claims occurred in this District.

26                              **DIVISIONAL ASSIGNMENT**

27

28

13.     Pursuant to Northern District of California Civil Local Rules 3-2(c), 3-2(e), and 3-5(b), assignment to the San Jose Division is proper because a substantial part of the events giving rise to the Plaintiffs' claims occurred, in substantial part, in Santa Clara County.

## STATEMENT OF FACTS

**I.     *BetterHelp prioritizes profits over the delivery of legitimate therapy services.***

14.     BetterHelp was founded in 2013 by Alon Matas and Danny Bragonier—serial entrepreneurs with no healthcare experience—as a direct-to-consumer online therapy service that offers text-based therapy as well as video conferencing, live chat, and audio calls.

15.      Two years later, in 2015, BetterHelp was acquired by Teladoc, a multinational public company. BetterHelp grew rapidly over the next 5 years, becoming a major player in the emerging field of virtual mental health services. The company offered rapid growth to investors based on a combination of widespread need and barriers to access.

16.     BetterHelp's growth accelerated further during the COVID-19 pandemic as people turned to telehealth amid lockdowns and social isolation. The company grew from 118,000 patients in 2018 to more than 641,000 patients in 2020. To date, BetterHelp has acquired more than 2 million users and generated more than $1 billion in revenue.

17.     BetterHelp's relentless quest for growth and profit created a fundamental tension within the company. The delivery of health care took a backseat to its profit-centric business function. This tension manifested in shocking ways, including, but not limited to, major breaches of patient confidentiality, false advertising, and the decision to force patients into automatically recurring subscription plans without notice or permission.

18.     Since it was acquired by Teladoc, BetterHelp has acted more like a Silicon Valley tech company than a healthcare provider. For example, in 2020, BetterHelp was caught sharing its patients' personal data with Facebook, including how many times they opened the BetterHelp app, along with metadata from each message they sent to their therapists on the platform. The data enabled Facebook to mine critical information about each patient, including who they were, where they lived, and how often they received mental health treatment.

First Amended Class Action Complaint

19.     In July 2023, the Federal Trade Commission ("FTC") ordered BetterHelp to pay $7.8 million to resolve claims that it disclosed its patients' sensitive health data—including email addresses, IP addresses, and health questionnaire information—with third parties such as Facebook and Snapchat for advertising despite its representations that it would keep such sensitive data strictly private. The Director of the FTC's Bureau of Consumer Protection explained that "When a person struggling with mental health issues reaches out for help, they do so in a moment of vulnerability," accused BetterHelp of "illegal exploitation," and lamented that BetterHelp "betrayed" its customers for the sake of profit.

## II.     *BetterHelp Lures New Patients By Making Materially False Promises About The Capacity of Its Provider Network.*

20.     BetterHelp tells users it has "the world's largest network of licensed, accredited, and experienced therapists" to give them the false impression that it has a therapist network sufficient to rapidly "match" patients with a provider suitable to meet their needs. In reality, however, BetterHelp accepts more patients than it has capacity to adequately treat.

21.     After navigating to BetterHelp's website, users click a button to "Get Started." At that point, they are directed to an intake questionnaire that asks several questions to help "match" them to a therapist who they "can establish a personal connection with." According to BetterHelp, "[t]he scale of our data and provider network, powered by our data science capabilities, creates a competitive advantage for us in providing an optimal match for an individual with a provider, increasing the rate of success in therapy."

22.     Despite these promises, BetterHelp's intake process consistently fails to offer patients useful matches. There have been widespread instances of users getting matched with providers who are not adequately trained to provide the mental health care requested.[1] Even

---

[1]     By assigning therapists that lack the training and experience necessary to treat patients' stated therapeutic needs, BetterHelp's violates the American Counseling Association's ("ACA") Code of Ethics. *See, e.g.*, ACA Code of Ethics Rule C.2.a (Boundaries of Competence) ("Counselors practice only within the boundaries of their competence, based on their education, training, supervised experience, state and national professional credentials, and appropriate professional experience"); C.2.b (New Specialty Areas of Practice) ("Counselors practice in specialty areas new to them only after appropriate education, training, and

providers on the platform have reported that clients have been matched to them despite explicitly requesting a different type of therapist (e.g., a white male therapist assigned to a woman patient seeking a female African American therapist). In many instances, BetterHelp pairs patients with providers who have expressly told BetterHelp that they are at capacity and not accepting new patients, which results in provider no-shows.

23.    In many instances, BetterHelp matches its California patients, including Plaintiff Rodarte, with therapists that are not even licensed to provide therapy in California.

24.    BetterHelp can't even keep its story straight about how long it takes to get matched with a therapist. In one page on its website, BetterHelp assures users that "[a]fter taking our short questionnaire, you can *instantly* message the therapist that you've been matched to." On another page, BetterHelp says that new users won't be matched instantly, but rather, "in most cases" they will be matched "within 24 hours" In reality, BetterHelp's matching process take several days—or in some cases, weeks—given its overcapacity problems.

25.    To make matters worse, BetterHelp assures its patients that they can change providers at any time—a fact that is particularly meaningful because BetterHelp does not provide new patients with the opportunity to meet or interview the therapists that they are "matched" with before signing up and providing their payment information.

26.    BetterHelp frames this as a simple and fast process, describing it as easy as a "click of a button" to get matched with another therapist. BetterHelp even touts this as a unique benefit of online counseling.

27.    But the process of switching providers suffers from the same problems and delays as the initial assignment. In practice, this has meant that BetterHelp continues to bill

---

supervised experience. While developing skills in new specialty areas, counselors take steps to ensure the competence of their work and protect others from possible harm."). Similarly, it violates the American Psychological Association's Code of Ethics which require that "psychologists have a primary ethical obligation to provide professional services only within the boundaries of their competence based on their education, training, supervised experience, consultation, study or professional experience." APA Code of Ethics Rule 2.01.

patients for extended periods of time, even when they don't receive any care. If patients were aware that BetterHelp did not have the capacity to address their needs, and that they would be caught in a cycle of charges for inadequate or nonexistent services, they would choose not to pay BetterHelp for therapy. This is particularly true for at-risk populations that BetterHelp targets including those, "who can't commute to an appointment . . . due to remote location, income insecurity, or a disability."

### III. *BetterHelp Deceptively Enrolls Its Patients into Automatically Renewing Subscription Programs.*

28.     To achieve its revenue and profit goals, BetterHelp knows and understands that it must both attract and retain new patients. BetterHelp accomplishes these goals first by misleading new patients about the availability and suitability of the therapists they will be "matched" with, and second, by secretly locking them into an automatically renewing subscription program. As shown below, BetterHelp fails to adequately notify or seek permission from patients before placing them into an automatically renewing subscription program and makes matters worse by failing to provide notice of its cancellation policy.

29.     Before new patients are ever matched with a therapist, they are prompted to input their payment information.

30.     Neither the checkout page (shown in Figure 1, below), nor any of the previous webpages tell the new patient that they will be automatically billed with renewing charges, and nowhere in the screen flow does BetterHelp obtain consent to automatically enroll them into a subscription plan.

1

**(Figure 1)**

2    31.    BetterHelp fails to adequately disclose its renewal scheme or purposefully

3    misrepresents it to new patient seeking mental health treatment in the following ways:

4        (a)    Prices are shown and calculated in *weekly* increments even though the term of

5            the automatic renewal is monthly;

6        (b)    BetterHelp fails to describe the plan as an automatically renewing subscription

7            plan, much less present the terms of the automatic renewal plan in contrasting

8            text of a distinct size or color;

9        (c)    The Checkout Page—where new patients enter their credit card number—fails

10            to mention an automatically renewing subscription plan;

11        (d)    The Checkout Page fails to mention that the credit card entered would be

12            charged in the future; and

13        (e)    The Checkout Page fails to identify, much less mention, a cancellation policy.

14    32.    The wording and visual design of BetterHelp's sign-up process deceives

15    customers into unknowingly purchasing an automatically renewing monthly plan.

16    33.    Although the checkout page makes a vague reference to the user being "charged

17    every 4 weeks," it fails to clarify that this is an automatically recurring subscription plan and

18

19

20

21

22

23    

24

25

26

27

28

fails to satisfy California's Automatic Renewal Law, Cal. Bus. & Prof. Code § 17602, and thus

cannot be considered consent from patients for enrollment in an automatic billing arrangement.

**IV.    *Thousands of Patients Have Posted Complaints About BetterHelp's Automatic Renewal Scheme and Therapist Availability Problems.***

34.    Thousands of patients have posted complaints on the Better Business Bureau

("BBB") platform, among others, about their problems and concerns with BetterHelp.

35.    Complaints show that users have been charged for services when they have not

been able to schedule a visit because their provider was unavailable. One complaint submitted

to the BBB described how one user's therapist became unavailable after sign-up which resulted

in them not receiving any services and still being billed.

 **Initial Complaint**           **Complaint Type:** Advertising/Sales Issues
10/27/2023                   **Status:** Resolved ❓

On October 22, 2023, I signed up for BetterHelp therapy services. When I applied, I was matched with a therapist 2 days later who at first was available to start therapy sessions. However, hours later she became no longer available for 7 days which meant I would not have any services I paid for during my monthly membership time. I contacted customer service through email and phone to discontinue my membership and provide a refund since therapists would not be available for the majority of the time during the one month period. Instead of quickly resolving this issue, they do not respond. They seem to "switch and bait" patients by claiming they can provide a service but then proving unable to. And they are taking advantage of customers by taking there money and then ensuring that customer service is not provided. So, as a result, I paid >$200 for non-existent therapy services and will not see those funds again.

only offer a person in crisis a robot to speak to but then charge $234 for it, without telling them!

36.    Numerous additional complaints have reported similar experiences. One user

complained that after sign-up they "never actually got to speak to a human" and were billed

 **Initial Complaint**           **Complaint Type:** Advertising/Sales Issues
01/19/2024                   **Status:** Resolved ❓

Though I downloaded the betterhelp app on my cell phone, I have had absolutely no contact with them and have received no services whatsoever. The money was drafted from my checking account. I have not spoken to any therapist at this organization.

automatically, calling the scheme "morally reprehensible."

37.    Another complained that they "received no services whatsoever" despite charges

being drafted from their checking account.

1

2

3

4          38.    Another patient expressed frustration that the company consistently reached out



**Initial Complaint**                    **Complaint Type:** Problems with Product/Service
11/12/2023                               **Status:** Answered ?

Better help app was running a special to buy 4 sessions for the price of ****** which seemed
like a great way to try out the zoom version of therapy without the commitment. I found a
therapist that was decent and we had a total of 2 sessions. She had to cancel a few times
and suddenly had extremely limited availability for evenings when I could meet so I didnt
meet with her again. I get reminders from better help all the time to do a journal entry. Or to
see how its going with my therapist. Not a single email about being billed monthly!
Somehow my signing up for ****** for 4 sessions turned into auto enrolling me into a
90/week subscription that has been coming out of my health savings account for months
and months wracking up over ******* in costs for just 2 therapy sessions! Im at a loss. The
only reason I had any indication I was auto enrolled is I got an email saying I would be auto
Renewed. This was the first I had seen about monthly subscription. I have written to the
therapist who has been paid for months now and never once reached out to let me know I
was being charged regardless of meeting with her. Ive also contacted customer service.

to her about journaling but failed to communicate that she had been auto enrolled in a "90/week

subscription" with her only finding out after months of receiving no services.

       39.    Other complaints show that customers have been left confused as to the

automatic nature of the billing describing it as a "complicated hooking scheme where



**Initial Complaint**                    **Complaint Type:** Problems with Product/Service
07/30/2023                               **Status:** Answered ?

Hello BBB,I recently signed up for BetterHealth for one month subscription to try their
therapy services. I was assigned to a therapist, who seems potentially helpful, but we
haven't been able to schedule any therapy sessions yet. I paid for the first month and now I
see that BetterHelp already charged my card automatically for the second month, even
though I did not sign up for a second month. I asked them about this, and paused my
subscription because the therapist and I were unable to schedule sessions. They said they
cannot refund this even if I paused or cancelled my subscription, and furthermore that the
unused sessions from the first month (no therapy was done) cannot be refunded unless I
unpause the subscription, on which they will be charging it as active again (for a third
month). They have a kind of complicated hooking scheme where they won't let the user stop
using their service without charging months ahead of time way ahead? and say they can't
refund or do anything if the therapist or user cannot meet for therapy, the charges all remain
for all 2 or 3 months, even though the months haven't happened yet, and no therapy
sessions have been able to be used.Can you please ask them to refund both charges they
have sent, since there was no therapy done? Also please ask them to remove me from their
subscription list, which they also seem to be unable to do, permanently holding my account
for charging many months ahead of time, which I haven't even used and asked them to stop,
to which they say they cannot.

[BetterHelp] won't let the user stop using their service without charging months ahead of

First Amended Class Action Complaint

1   time."

2        40.       Verified user complaints on the Apple App Store and Google Play App show

3   that countless other users have described being left with large bills without receiving the care

4   they expected. One user bluntly described the billing as "deceiving," while another described

5   confusion about Defendant's billing practices, stating that they were "under the impression it

6   [was] charged by the week not a lump sum."

7
8
9
10
11
12
13
14
15



16
17
18
19
20
21
22
23
24
25
26
27



28

41.    Twitter is likewise filled with similar patient complaints, including, for example:



**cami**
@camisplaylist    ...

@betterhelp how can i get a refund? i used the site for ONE day, it was an emergency, it tooks me MINUTES to find a therapist who couldnt care less, i canceled right away and was billed 260 today???? im never using the site AGAIN so if we can work this out, thatd be great thanks.

1:06 PM · Feb 5, 2024 · **110** Views



**Ayca Miller (she/her)**
@aycawawa    ...

Hey @betterhelp! My card was charged but I have zero live sessions on my account. This has been an ongoing saga with your support team for four days. Your app is supposed to help people reduce stress/anxiety, not exacerbate it. I hope you can figure out the issue soon! #DoBetter

5:05 PM · Oct 13, 2023 · **213** Views



**Pat**
@UnitedPatM    ...

My therapist has left @betterhelp and so I looked for another therapist on the site, she didn't have the availibility I was looking for. Then they paired me with another one. She didn't have it either. Now they have given me an ultimatum between two therapists or nothing at all.

8:15 AM · Jun 28, 2023 · **114** Views

42.    All of these complaints demonstrate consumer confusion with respect to BetterHelp's business practices.

43.    In sum, patients are lured to BetterHelp with promises that they should expect professional, personalized mental health services akin to traditional in-person therapy. Instead, they are often left without a provider for extended periods or met with providers unable to meet their specialized needs, unlicensed to provide them care, or unwilling to treat them appropriately because of the corporate constraints imposed by BetterHelp—all of which occurs while BetterHelp unlawfully profits through its covert automatic subscription scheme.

**V.    *Plaintiff Jenna Rodarte's Experience with BetterHelp.***

44.    Plaintiff Rodarte is a California resident that turned to BetterHelp for therapy in June 2020.

45.    During the new patient intake process, BetterHelp presented Plaintiff Rodarte with a series of questions designed to obtain information necessary to pair her with a suitable and compatible therapist. In response to the question "Would you like to be matched with a therapist who specializes in LGBT issues," Plaintiff Rodarte answered "Yes." As a member of the LGBT community, it was critical to Plaintiff Rodarte that she was paired with a therapist that had experience working with LGBT patients.

46.    However, instead of pairing Plaintiff Rodarte with a therapist that specialized in LGBT issues, BetterHelp paired her with a therapist that was not accepting of, and highly antagonistic toward, members of the LGBT community.

47.    After a few therapy sessions, Plaintiff Rodarte finally felt comfortable enough to disclose her sexuality identity to her therapist. Unfortunately, her therapist became visibly shocked and stated, "I didn't know this" and "Did you say this in your questionnaire?" Clearly having no experience with LGBT issues, Plaintiff Rodarte's therapist then told her not to read any books with "female friendships" because they could be "pushing an agenda" and to avoid walking through parks because she could be assaulted. Plaintiff Rodarte's therapist also told her that spending time with family and attending church would improve her mental health, even though she knew that Plaintiff Rodarte's family made her anxious and that she was not religious. Plaintiff Rodarte's therapist made her feel guilt and shame, and the therapy sessions had a devastating impact on her mental health.

48.    Plaintiff Rodarte thereafter cancelled her BetterHelp membership in August 2020, but due to her debilitating mental health issues, turned back to BetterHelp a month later in the hopes of being matched with a suitable therapist. This time, BetterHelp matched Plaintiff Rodarte with a therapist located in Charlotte, North Carolina who specialized in LGBT issues, but failed to tell Plaintiff Rodarte that her new therapist was did not possess the requisite

professional license to treat patients in the State of California. Moreover, Plaintiff Rodarte was

nonetheless prevented from utilizing the therapy sessions she paid for up front on October 14,

2020, as her sessions with her new out-of-state, unlicensed therapist suffered from significant

technical issues that led to most being significantly interrupted or cut short.

49.     Plaintiff Rodarte would not have purchased therapy services from BetterHelp if

she had known that it lacked a large enough network of suitable therapists on hand to provide

services.

50.     Plaintiff Rodarte would not have purchased therapy services from BetterHelp if

she would have known that it would assign her to a therapist that lacked the proper licensing to

treat patients residing in California.

**VI.     *Plaintiff K.T.'s Experience with BetterHelp.***

51.     Plaintiff K.T. is a California resident that turned to BetterHelp for therapy in

September 2023.

52.     Plaintiff K.T. was initially matched with a therapist that appeared inexperienced

and unsuited to provide adequate therapy to her. Beyond these problems, Plaintiff K.T.'s first

therapist was highly unprofessional, often conducting the therapy sessions while driving in her

car, showing up to sessions late, and ending sessions early. Plaintiff K.T. thereafter initiated the

process to switch to a different therapist.

53.     Plaintiff K.T.'s second assigned therapist was no better and she ultimately

decided not to purchase any more therapy sessions from BetterHelp.

54.     Unbeknownst to Plaintiff K.T., however, she was entered into an automatically

renewing subscription plan and her credit card was charged monthly. In fact, BetterHelp

continued charging Plaintiff K.T.'s credit card every month despite the fact that she did not

utilize the service or even log into her account.

55.     BetterHelp collected hundreds of dollars month after month from Plaintiff K.T.

despite that her account was inactive and she had no communication whatsoever with any

therapist on the platform.

56.    Plaintiff K.T. would not have purchased therapy sessions from BetterHelp had she known that they would automatically enter her into a renewing subscription plan without her permission.

## CLASS ACTION ALLEGATIONS

57.    **Class Definition:** Plaintiffs bring this proposed class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of themselves and the following classes:

> **California Autorenewal Class**: All individuals who reside in California that were automatically enrolled into and charged for a BetterHelp subscription plan.

> **California Unlicensed Therapist Class**: All individuals who reside in California that were matched with an out-of-state provider.

58.    **Numerosity:** The exact number of members in each Class is unknown and not available to Plaintiffs at this time, but it is clear that individual joinder is impracticable. It is believed that tens of thousands of consumers have purchased BetterHelp plans and fall into the class definition, having been harmed by BetterHelp's misrepresentations and failure to disclose its automatic renewal terms. The number and identity of class members can be ascertained from BetterHelp's records.

59.    **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiffs and the Classes, and those questions predominate over any questions that may affect individual members. Common questions for the Classes include, but are not necessarily limited to the following:

> (a)    Whether BetterHelp enrolled patients into automatically renewing subscription programs without consent;

> (b)    Whether BetterHelp matched its California patients with out-of-state therapists;

> (c)    Whether BetterHelp's out-of-state matching policy and lack of disclosure about its out-of-state matching policy is unfair and/or fraudulent under the UCL; and

1

2

      (d)     Whether Plaintiffs and the Classes are entitled to disgorgement and/or restitution.

3     60.    **Adequate Representation:** Plaintiffs will fairly and adequately represent and

4 protect the interests of the Classes—Plaintiff Rodarte will adequately represent the California

5 Unlicensed Therapist Class, and Plaintiff K.T. will adequately represent the California

6 Autorenewal Class—and have retained counsel competent and experienced in complex

7 litigation and class actions. Plaintiffs' claims are representative of the claims of the other

8 members of the Classes. That is, Plaintiffs and the members of the Classes sustained harm as a

9 result of Defendant's conduct. Plaintiffs also have no interests antagonistic to those of the

10 Classes, and Defendant has no defenses unique to Plaintiffs. Plaintiffs and their counsel are

11 committed to vigorously prosecuting this action on behalf of the members of the Classes and

12 have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest

13 adverse to the Classes.

14     61.    **Predominance and Superiority:** Class proceedings are superior to all other

15 available methods for the fair and efficient adjudication of this controversy, as joinder of all

16 members of the Classes is impracticable. Individual litigation would not be preferable to a class

17 action because individual litigation would increase the delay and expense to all parties due to

18 the complex legal and factual controversies presented in this Complaint. By contrast, a class

19 action presents far fewer management difficulties and provides the benefits of single

20 adjudication, economy of scale, and comprehensive supervision by a single court. Economies

21 of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

22

**FIRST CAUSE OF ACTION**
**Violations of Cal. Bus. & Prof. Code § 17200,** *et seq.*
**On Behalf Plaintiff K.T. and the California Autorenewal Class**

23

24     62.    Plaintiff K.T. incorporates the foregoing allegations as if fully set forth herein.

25     63.    California's Unfair Competition Law ("UCL") prohibits unfair competition in

26 the form of "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive,

27 untrue or misleading advertising[.]" Cal. Bus. & Prof. Code § 17200. The UCL allows "a

28

1    person who has suffered injury in fact and has lost money or property" to prosecute a civil

2    action for violation of the UCL. *Id.* § 17204.

3        64.    BetterHelp's acts and practices alleged herein are "unlawful" within the meaning

4    of the UCL because they violated California's Automatic Renewal Law ("ARL"), Cal. Bus. &

5    Prof. Code § 17600, *et seq.*

6        65.    The California Legislature enacted the ARL to "end the practice of ongoing

7    charging of consumer credit or debit cards or third party payment accounts *without the*

8    *consumers' explicit consent* for ongoing shipments of a product or ongoing deliveries of

9    service." *Id.* § 17600 (emphasis added).

10        66.    To achieve this goal, the ARL makes it unlawful for any business offering an

11    automatic renewal or continuous service to do any of the following:

12            A.    Fail to present the automatic renewal offer terms or continuous service offer

13                    terms in a clear and conspicuous manner before the subscription or purchasing

14                    agreement is fulfilled and in visual proximity . . . to the request for consent to

15                    the offer; and

16            B.    Charge the consumer's credit or debit card, or the consumer's account with a

17                    third party, for an automatic renewal or continuous service without first

18                    obtaining the consumer's affirmative consent to the agreement containing the

19                    automatic renewal offer terms or continuous service offer terms, including the

20                    terms of an automatic renewal offer or continuous service offer that is made at

21                    a promotional or discounted price for a limited period of time.

22        67.    Next, the ARL requires that the automatic renewal offer contain the following

23    disclosures: (1) that the subscription or purchasing agreement will continue until the consumer

24    cancels; (2) the description of the cancellation policy that applies to the offer; (3) the recurring

25    charges that will be charged to the consumer's credit or debit card or payment account with a

26    third party as part of the automatic renewal plan or arrangement; (4) the length of the automatic

27    renewal term or that the service is continuous, unless the length of the term is chosen by the

28

consumer; and (5) the minimum purchase obligation, if any. *Id.* § 17601(b).

68.    Finally, the automatic renewal offer must be "clear and conspicuous" which specifically means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." *Id.* § 17601(c).

69.    Plaintiff K.T. and the California Autorenewal Class are "consumers" as defined by the ARL because they purchased services from BetterHelp for personal, family, or household purposes.

70.    BetterHelp's conduct of enrolling Plaintiff K.T. and the California Autorenewal Class into an automatically renewing subscription program is unlawful because:

(1)    BetterHelp failed to present the automatic renewal offer terms in a clear and conspicuous manner in visual proximity to the request for consent to the offer in violation of § 17602(a)(l); and

(2)    BetterHelp charged their credit or debit cards in connection with an automatic renewal without first obtaining their affirmative consent to an agreement containing clear and conspicuous disclosures of all automatic renewal offer terms, in violation of § 17602(a)(2).

71.    Each of these acts and practices constitutes an independent violation of the ARL, and thus an independent violation of the UCL.

72.    Plaintiff K.T. and the California Autorenewal Class have suffered losses in the form of money wrongfully charged for the automatically renewing subscription plan that they did not authorize.

73.    Under Cal. Bus. & Prof. Code § 17203, Plaintiff K.T. and the California Autorenewal Class seek restitution and/or disgorgement of all amounts paid in connection with the automatically renewing subscription plans as well as injunctive relief prohibiting BetterHelp from continuing to engage in the conduct herein.

74.    Plaintiff K.T. and the California Autorenewal Class lack an adequate remedy at law because (1) the UCL does not provide for monetary damages or any other legal remedy, and (2) legal remedies are less certain.

75.    Plaintiff K.T., individually and on behalf of the California Autorenewal Class, brings this action to enforce an important right affecting the public interest, and therefore also seek an award of attorneys' fees under Cal. Code of Civ. Proc. § 1021.5.

**SECOND CAUSE OF ACTION**
**Violations of Cal. Bus. & Prof. Code § 17200, *et seq.***
**On Behalf Plaintiff Rodarte and the California Unlicensed Therapist Class**

76.    Plaintiff Rodarte incorporates the above allegations as if fully set forth herein.

77.    BetterHelp and Plaintiff Rodarte are "persons" as defined by Cal. Bus. & Prof. Code § 17201.

78.    By engaging in the above-described deceptive and unfair business acts and practices, BetterHelp has committed and continues to commit one or more acts of unfair and fraudulent conduct within the meaning of Cal. Bus. & Prof. Code § 17200, *et seq.* These acts and practices constitute a continuing and ongoing unlawful business activity defined by the UCL, and justify the issuance of an injunction, restitution, and other equitable relief pursuant to the UCL.

79.    The California Board of Behavioral Sciences requires that "all persons engaging in the practice of marriage and family therapy, educational psychology, clinical social work, or professional clinical counseling via telehealth . . . with a client who is physically located in [the State of California] must have a valid and current license or registration issued by the Board." 16 Cal. Code of Regs. § 1815.5(a). In other words, only therapists that are licensed by the State of California may treat patients located in the State of California.

80.    When therapists provide therapy to patients located in California without a valid and current license to do so, they are engaged in "unprofessional conduct." 16 Cal. Code of Regs. § 1815.5(f).

81.    Despite this licensing restriction, BetterHelp knowingly matched Plaintiff

-19-

Rodarte and the California Unlicensed Therapist Class members with therapists that were not licensed by the State of California.

82.     At no time did BetterHelp disclose to Plaintiff Rodarte or the members of the California Unlicensed Therapist Class that they would be matched—or could be matched—with therapists that were not licensed by the State of California.

83.     BetterHelp concealed this practice because it knew that if Plaintiff Rodarte and the California Unlicensed Therapist Class members had knowledge that they were matched with therapists that were not licensed to treat patients in California—and that their therapists were engaging in "unprofessional conduct" by treating patients in California—they would not have agreed to pay any money to BetterHelp for therapy sessions.

84.     As such. BetterHelp engaged in acts and practices that violate the "unfair" prong of the UCL.

85.     BetterHelp also violated the "fraudulent" prong of the UCL by concealing its true matching practices from its patients. BetterHelp knew that patients would not pay money for therapy if they knew there was a possibility that they would be matched with an unlicensed therapist, or at the very least would have paid substantially less.

86.     BetterHelp also knew that patients would not pay money for therapy if they knew that their therapist was engaging in "unprofessional conduct" by treating them. This omission is therefore highly material and likely to deceive reasonable consumers, especially given that BetterHelp tells patients that they will be matched with a "Professional, licensed, and vetted therapists who you can trust." In fact, the new patient intake questionnaire that every patient—including Plaintiff Rodarte and the California Unlicensed Therapist Class—must complete states that "The following questions are designed to help match you to a *licensed therapist* based on your needs and personal preferences." (emphasis added.)

87.     Plaintiff Rodarte and California Unlicensed Therapist Class suffered harms and losses in the form of all monies paid to BetterHelp in connection with the mental health services that were rendered by unlicensed providers. But for BetterHelp's misrepresentations

and omissions, Plaintiff Rodarte and the California Unlicensed Therapist Class would not have utilized or paid for BetterHelp's services.

88.    The foregoing acts and practices by BetterHelp constitute an ongoing unfair and fraudulent business activity defined by the UCL. BetterHelp's conduct is contrary to the public welfare as it contravenes California law designed to protect patients' best interests and violated established public policy. The business practices described herein are likely to deceive members of the public, are immoral, unethical, oppressive, and unscrupulous, and have caused injury to customers far greater than any alleged countervailing benefit.

89.    Plaintiff Rodarte and the California Unlicensed Therapist Class lack an adequate remedy at law because (1) the UCL does not provide for monetary damages or any other legal remedy, and (2) legal remedies are less certain.

90.    Plaintiff Rodarte, individually and on behalf of the California Unlicensed Therapist Class, brings this action to enforce an important right affecting the public interest, and therefore also seek an award of attorneys' fees under Cal. Code of Civ. Proc. § 1021.5.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Jenna Rodarte and K.T., individually and on behalf of the Classes defined herein, respectfully request that the Court enter an Order:

A.    Certifying the California Autorenewal Class and the California Unlicensed Therapist Class as defined above, naming Plaintiffs as a representative of the Classes, and Plaintiffs' attorneys as Class Counsel;

B.    Declaring that BetterHelp's conduct violates the statutes referenced herein;

C.    Declaring that BetterHelp's conduct described herein is unfair and fraudulent under the UCL;

D.    Awarding injunctive relief and other equitable relief necessary to protect the interests of Plaintiffs and the Classes, including by enjoining Defendant from continuing to engage in the unfair and/or fraudulent business practices alleged herein;

FIRST AMENDED CLASS ACTION COMPLAINT

Case 5:24-cv-07154-BLF   Document 16   Filed 12/12/24   Page 22 of 22

E.  Awarding restitution and disgorgement of profits in an amount to be determined at trial;

F.  Awarding reasonable attorneys' fees and costs; and

G.  Awarding any other relief this Court deems just, proper, and equitable.

## <u>JURY DEMAND</u>

Plaintiff hereby requests a trial by jury of all issues so triable.


Dated: December 12, 2024                By: */s/ Jared Lucky*
                                        One of Plaintiffs' Attorneys

                                        Rafey S. Balabanian (SBN 315962)
                                        rbalabanian@edelson.com
                                        Jared Lucky (SBN 354413)
                                        jlucky@edelson.com
                                        EDELSON PC
                                        150 California Street, 18th Floor
                                        San Francisco, California 94111
                                        Tel: 415.212.9300
                                        Fax: 415.373.9435

                                        *Counsel for Plaintiffs and the Putative Classes*

-22-

FIRST AMENDED CLASS ACTION COMPLAINT